FILED

2018 JUN -8 AM 9: 19

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,**<br>Petitioner,<br><br>v.<br><br>**FULLY ACCOUNTABLE, LLC,**<br>Respondent. | **JUDGE LIOI**<br><br>Misc. No.<br>5:18 MC 54 |

### FEDERAL TRADE COMMISSION'S PETITION TO ENFORCE
### CIVIL INVESTIGATIVE DEMAND

The Federal Trade Commission respectfully petitions this Court pursuant to Section 20 of the Federal Trade Commission Act (FTC Act), 15 U.S.C. § 57b-1, to issue an order to show cause and thereby commence a proceeding to enforce a civil investigative demand (CID) issued to Respondent Fully Accountable, LLC.[1]

---

[1] This is a summary proceeding that is properly instituted by a petition and order to show cause (rather than a complaint and summons). *See, e.g., United States v. Markwood*, 48 F.3d 969, 980-983 (6th Cir. 1995) (approving use of order to show cause and citing, *inter alia, United States v. Will*, 671 F.2d 963, 968 (6th Cir. 1982)). In operation, these FTC proceedings resemble proceedings to enforce IRS summons. *See, e.g., United States v. Maunz*, No. 3:11-mc-00013-JZ (N.D. Ohio 2011). The Commission has previously used such procedures in CID enforcement proceedings in this Court. *See FTC v. Infante*, No 4:17-mc-00008-CAB (N. D. Ohio, filed Feb. 7, 2017).

Respondent provides services such as business consulting, accounting, and assistance in credit card payment processing. The FTC is investigating whether Fully Accountable, its clients, or related entities or individuals have made deceptive or unsubstantiated representations in connection with the marketing of health-related products, or have unlawfully charged or participated in the charging of consumers for products without the consumers' authorization. The Commission issued this CID seeking documents and interrogatory responses in the course of that investigation.

As set forth in greater detail in the accompanying memorandum, this Court should enforce the CID because Fully Accountable has failed to comply in multiple respects. The company has produced no documents at all and its responses to interrogatories have been insufficient. For example, the company has refused to produce any information about its ownership and organizational structure, claiming that privately-held companies are exempt from producing such information. It also claims that it is outside of the scope of the Commission's investigation. In fact, neither of those claims justifies noncompliance. Fully Accountable has also withheld information that it claims is confidential, but that too is not a valid ground to refuse production. Finally, Fully Accountable has withheld information by narrowing the scope of the CID through selective interpretations of the CID specifications. This refusal to cooperate has stymied the Commission staff's investigation.

Nor has Fully Accountable appropriately asserted any objections to the CID. The company did not raise any concerns to the investigating staff attorneys or seek

administrative relief through filing a petition to limit or quash the CID with the Commission. The Court should therefore enforce the CID and direct that Fully Accountable produce the information specified within 10 days.

The Commission herewith submits the Declaration of Harris Senturia, designated as Petitioner's Exhibit (Pet. Ex.) 1, to verify the allegations herein. The Commission also submits the following additional exhibits:

| | |
|---|---|
| Pet. Ex. 2 | Civil Investigative Demand to Fully Accountable, LLC (Sept. 21, 2017); |
| Pet. Ex. 3 | FedEx Delivery Confirmation, Tracking # 770322176852 (Sept. 26, 2017); |
| Pet. Ex. 4 | Letter from Assistant Regional Director Larissa Bungo to Rachel Scava (Oct. 16, 2017); |
| Pet. Ex. 5 | Letter from Harris Senturia to Rachel Scava (Oct. 27, 2017); |
| Pet. Ex. 6 | Letter from Rachel Scava to Harris Senturia (Nov. 6, 2017); |
| Pet. Ex. 7 | Letter from Harris Senturia to Rachel Scava (Nov. 15, 2017); and |
| Pet. Ex. 8 | Letter from Rachel Scava to Harris Senturia (Nov. 20, 2017). |

## Jurisdiction and Venue

1. This Court has jurisdiction to enforce the Commission's duly issued CIDs under Sections 20(e) and (h) of the FTC Act, 15 U.S.C. §§ 57b-1(e), (h). This Court also has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.

2. Venue is proper in this judicial district under Section 20(e) of the FTC Act, 15 U.S.C. § 57b-1(e), because Fully Accountable is found and transacts business here. Pet. Ex. 1, ¶ 3. Venue is also proper under 28 U.S.C. § 1391.

## The Parties

3. Petitioner, the Federal Trade Commission, is an administrative agency of the United States, organized and existing under the FTC Act, 15 U.S.C. §§ 41 *et seq.*

4. The Commission has broad statutory authority to address unfair or deceptive acts or practices. For instance, Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits, and directs the Commission to combat, unfair methods of competition and unfair or deceptive acts or practices in or affecting commerce. Section 12 of the FTC Act, 15 U.S.C. § 52, further prohibits false advertising for the purpose of inducing, directly or indirectly, the purchase of food, drugs, devices, services, or cosmetics.

5. The FTC Act empowers the agency to investigate potential violations of these laws. Sections 3 and 6(a) of the FTC Act, 15 U.S.C. §§ 43, 46(a), authorize the Commission to conduct investigations nationwide and to gather information on any "person, partnership, or corporation[,]" and Section 20(c) of the FTC Act, 15 U.S.C. § 57b-1(c), authorizes the Commission to issue CIDs requiring the recipients to produce documents, prepare answers to interrogatories, and provide oral testimony under oath.

6. The Commission has promulgated three ongoing resolutions pertinent to this case authorizing its staff to investigate various potential violations of the FTC Act and to use compulsory process to secure information related to the potential violations. The first resolution, File No. 0023191, authorizes the use of

process to investigate whether entities are "directly or indirectly" "misrepresenting the safety or efficacy" of "dietary supplements, foods, drugs, devices, or any other product or service intended to provide a health benefit" on the grounds that such conduct could amount to "unfair or deceptive acts or practices or in the making of false advertising . . . in violation of Sections 5 and 12 of the Federal Trade Commission Act, 15 U.S.C. §§ 45 and 52." Pet. Ex. 2 at 21.

7. The second resolution, File No. 9923259, authorizes the use of compulsory process to investigate whether entities are engaging in, among others, "deceptive or unfair practices involving Internet-related goods or services." If such conduct is taking place, it could violate Sections 5 or 12 of the Federal Trade Commission Act, 15 U.S.C. §§ 45, 52. Pet. Ex. 2 at 22.

8. The third resolution, File No. 082-3247, authorizes the use of process to determine if entities "have engaged in or are engaging in deceptive or unfair practices . . . *in connection with* making unauthorized charges or debits to consumers' accounts." Pet. Ex. 2 at 23 (emphasis added). If such conduct is occurring, it could violate Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, and/or the Electronic Fund Transfer Act, 15 U.S.C. § 1693, et seq. *Id.*

9. Respondent Fully Accountable, LLC, is based in Fairlawn, Ohio. Fully Accountable markets itself as a "Back Office Solution" specializing in providing services to internet marketers. These services include compiling and reporting financial statistics, accounting and bookkeeping, business consulting, and assisting

its clients to obtain and manage credit card payment processing accounts. Pet. Ex. 1, ¶ 3.

10. Among Fully Accountable's clients are a group of entities that have marketed online several dietary supplements, including, but not limited to, a supplement called Geniux (and other names) that purportedly reduces cognitive decline and related conditions. The FTC learned that some consumers claimed that the marketers charged them for such products without authorization. For purposes of the CID at issue, these entities are called "Group A."[2] Pet. Ex. 1, ¶ 4.

11. In addition, Fully Accountable itself is closely related to a second group of entities that centered around a company called Leading Health Supplements. These entities also marketed various supplements online, including skin creams, weight loss supplements, and a purported cognitive assistance supplement. As with the Group A Entities, the entities related to Fully Accountable have also been the subject of numerous consumer complaints regarding their marketing practices, including unauthorized charges to consumers' credit cards. For purposes of the CID at issue, these entities are called "Group B."[3] Pet. Ex. 1, ¶ 5.

---

[2] As defined in the CID, the Group A Entities include Innovated Health LLC, Global Community Innovations LLC, Premium Health Supplies, LLC, Buddha My Bread LLC, Innovated Fulfillment LLC, Vista Media LLC, Emerging Nutrition Inc., ShipSmart LLC, Guerra Company LLC, ASH Abbas LLC, and Your Healthy Lifestyle LLC, and any related entities. Pet Ex. 2 at 14-15.

[3] As defined in the CID, the Group B Entities include Leading Health Supplements, LLC (also dba Health Supplements), AMLK Holdings, LLC, General Health Supplies, LLC, Natural Health Supplies, LLC, BHCO Holdings, LLC, and Consumer's Choice Health, LLC, and any related entities. Pet. Ex. 2 at 15.

**The Commission's Investigation and Civil Investigative Demand**

12. This investigation seeks to determine whether Fully Accountable complies with Sections 5 and 12 of the FTC Act through its associations with, and the services it provided to, the Group A and Group B Entities. The topics covered by the CID include the following:

    a. Respondent's ownership, leadership, and organization;

    b. Respondent's relationship with the Group A and Group B Entities, including documents related to contracts, applications, or agreements with these entities;

    c. Accounting records and information for the Group A and Group B Entities, including records and information regarding Geniux product sales, and advertising and research expenses (and sales and advertising expenses for non-Geniux products);

    d. Records relating to payment processing services provided to the Group A and Group B Entities, including records relating to the entities' payment processing activities; and

    e. Consumer complaints and related communications.

Pet. Ex. 1, ¶ 11.

13. Acting pursuant to the investigational resolutions described in paragraphs 6-8 above, on September 21, 2017, the Commission issued a CID to Fully Accountable directing it to produce certain documents and respond to interrogatories no later than October 23, 2017. Pet. Ex. 2 at 4. Each of the resolutions would independently justify the CID, as staff is investigating conduct involving the online marketing of food, drugs, or dietary supplements, and involves alleged unauthorized credit card charges.

14. In issuing the CID, the Commission followed all the procedures and requirements of the FTC Act and its Rules of Practice and Procedure. *See, e.g.*, 15 U.S.C. §§ 57b-1(c)(2), (c)(3), (c)(7); 16 C.F.R. § 2.7. The CID was properly signed by Acting Chairman Maureen K. Ohlhausen pursuant to the resolutions, as required by Section 20 of the FTC Act. *See* Pet. Ex. 2 at 4; *see also* 15 U.S.C. § 57b-1(i); 16 C.F.R. § 2.7(a).

15. The FTC served the CID on Fully Accountable on September 26, 2017, directing it to Christopher Giorgio, Fully Accountable's President. *See* Pet. Ex. 3; *see also* 15 U.S.C. § 57b-1(c)(8); 16 C.F.R. § 4.4(a)(3).

16. After issuing the CID, Commission staff engaged in a meet-and-confer process with the company. After discussions on October 10 and 16, 2017, staff agreed to formally modify the CID, providing a "phased" production with four deadlines: October 23, October 30, November 6, and November 20. Pet. Ex. 1, ¶¶ 13-17; Pet. Ex. 4.

17. At no point in these discussions did Fully Accountable raise any objections or concerns regarding any of the CID specifications. Nor did Fully Accountable file a petition to limit or quash the CID, the administrative remedy provided to CID recipients by the Commission's Rules of Practice. *See* 16 C.F.R. § 2.10; Pet. Ex. 1, ¶¶ 14-15, 18-19.

18. Fully Accountable provided responses on each of the specified deadlines, but these responses did not include any documents. Instead, the company purported to respond to the interrogatories and also lodged numerous objections

and reasons it was not producing information. A chart attached to Mr. Senturia's Declaration as Attachment 1 describes the deficiencies identified by FTC staff in detail. *See* Pet. Ex. 1, Att. 1.

19. In a series of letters exchanged between October 27 and November 20, 2017, FTC staff repeatedly informed Fully Accountable that its productions were deficient and its reasons for noncompliance baseless. Commission staff identified three key deficiencies:

> a. *Improper withholding of information about the company's ownership, leadership, and organization.* Two specifications, S-2 and S-12, ask for information and documents concerning Fully Accountable's ownership and management, as well as its organizational structure and personnel directory. Pet. Ex. 2 at 7, 10. Fully Accountable did not provide any of the requested information or documents. It claimed that it was outside of the scope of the FTC's investigation because it did not provide any marketing or advertising services, in any capacity, for any of the companies listed in the CID and thus did not have to respond. Fully Accountable further claimed that "[a]s a privately held company" it was not required to disclose its ownership or organizational chart. Pet Ex. 6 at 1, 2; *see also* Pet. Ex. 5 at 2; Pet. Ex. 7 at 2 (FTC staff responses).

- 9 -

b. *Improper withholding of documents about client activity on confidentiality grounds.* Specifications S-13, S-14, S-37, S-38, and S-17 through S-20 all call for information about the Group A and Group B Entities, as well as financial and accounting records for the Group A Entities. *See* Pet. Ex. 2 at 10, 12. Fully Accountable refused to produce this information claiming that contracts prevent it from providing the information unless the FTC either secures consent from each of these entities or provides a "Protective Order." Pet. Ex. 6 at 2-3; Pet. Ex. 8 at 3.

c. *Improper withholding of documents relating to contracts, applications, or agreements based on a narrow reading of the specifications.* Specification S-16 of the CID calls for "[a]ll documents relating to contracts, applications, or agreements for any Group A Entity." Pet. Ex. 2 at 10. Fully Accountable claimed it had no contracts, applications, or agreements with the Group A Entities. It further claimed that while it used "engagement letters," it had no such letters for these entities.[4] Pet. Ex. 7 at 3. Fully Accountable's response, however, failed to address whether it has any "documents *relating to* contracts, applications, or agreements," as the CID specified. Pet. Ex. 2 at 10 (emphasis added). The FTC has reason to believe from other

---

[4] Fully Accountable made the same claim with respect to a substantially identical specification calling for the same documents from Group B Entities. *See* Pet. Ex. 2 at 12 (Specification S-40); Pet. Ex. 8 at 3.

    information provided that such documents exist. Moreover, Fully Accountable's statement that it has no responsive information cannot be squared with its claim, discussed above, that "contractual obligations" require special protections for confidential information.

  d. Fully Accountable has employed similarly narrow or selective readings of other CID specifications to avoid producing responsive information. For example, although the CID called for information concerning documents disposed of beginning in 2014, Fully Accountable unilaterally employed a much shorter time period in reporting that it had no responsive information. Pet. Ex. 1, ¶ 43. Similarly, although the CID provided a specific definition of the term "Payment Processing," Fully Accountable used a far narrower definition of its own devise. Using such artificially narrowed specifications, Fully Accountable claimed it did not have responsive information. Pet. Ex. 1, ¶ 44

20. Fully Accountable's failure to comply with the September 21, 2017 CID has materially impeded the Commission's ongoing investigation. Pet. Ex. 1, ¶¶ 45-46.

## Prayer For Relief

WHEREFORE, the Commission invokes the aid of this Court and prays for:

    a.    Immediate issuance of an order, substantially in the form attached, directing Respondent Fully Accountable, LLC to show cause why it should not comply in full with the Commission's CID, and setting forth a briefing schedule; and

    b.    A prompt determination of this matter and entry of an order:

        (i)    Compelling Respondent to produce the documents and information specified in the September 22, 2017 CID within 10 days of such order;

        (ii)    Granting such other and further relief as this Court deems just and proper.

Respectfully submitted,

ALDEN F. ABBOTT
General Counsel

JOEL MARCUS
Deputy General Counsel for Litigation

LESLIE RICE MELMAN
Assistant General Counsel for Litigation

*/s/ Burke W. Kappler*
BURKE W. KAPPLER
Attorney

FEDERAL TRADE COMMISSION
600 Pennsylvania Ave., N.W.
Washington, DC 20580
Tel.: (202) 326-2043
Fax: (202) 326-2477
Email: bkappler@ftc.gov

Dated: June 6, 2018.