# **Petition Exhibit 2**

## Civil Investigative Demand to Fully Accountable, LLC

## (Sept. 21, 2017)



UNITED STATES OF AMERICA
FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

Office of the Secretary

**SEP 2 2 2017**

<u>Via Federal Express</u>
Christopher Giorgio
President
Fully Accountable LLC
2680 West Market Street
Fairlawn, OH 44333

FTC Matter No. 1723195

Dear Mr. Giorgio:

The Federal Trade Commission ("FTC") has issued the attached Civil Investigative Demand ("CID") asking for information as part of a non-public investigation. Our purpose is to determine whether Fully Accountable, the Group A Entities, or the Group B Entities, each as defined in the attached CID, and related entities and individuals, have made or participated in making, in any respect, false, misleading, or unsubstantiated representations in connection with the marketing of consumer products, in violation of Sections 5 and 12 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45 and 52, or have engaged in deceptive or unfair acts or practices by charging or participating in the charging, in any respect, for consumer products without consumers' authorization, in violation of Section 5 of the FTC Act, and whether Commission action to obtain monetary relief would be in the public interest. Please read the attached documents carefully. Here are a few important points we would like to highlight:

1. **Contact FTC counsel, Harris Senturia (216-263-3420; hsenturia@ftc.gov) as soon as possible to schedule an initial meeting to be held within 14 days.** You can meet in person or by phone to discuss any questions you have, including whether there are changes to how you comply with the CID that would reduce your cost or burden while still giving the FTC the information it needs. Please read the attached documents for more information about that meeting.

2. **You must immediately stop any routine procedures for electronic or paper document destruction, and you must preserve all paper or electronic documents** that are in any way relevant to this investigation, even if you believe the documents are protected from discovery by privilege or some other reason.

3. **The FTC will use information you provide in response to the CID for the purpose of investigating violations of the laws the FTC enforces.** We will not disclose the information under the Freedom of Information Act, 5 U.S.C. § 552. We

may disclose the information in response to a valid request from Congress, or other civil or criminal federal, state, local, or foreign law enforcement agencies for their official law enforcement purposes. The FTC or other agencies may use and disclose your response in any federal, state, or foreign civil or criminal proceeding, or if required to do so by law. However, we will not publicly disclose your information without giving you prior notice.

4.  **Please read the attached documents closely.** They contain important information about how you should provide your response.

Please contact FTC counsel as soon as possible to set up an initial meeting. We appreciate your cooperation.

Very truly yours,

Donald S. Clark
Secretary of the Commission



United States of America
Federal Trade Commission

## *CIVIL INVESTIGATIVE DEMAND*

**1. TO**

Fully Accountable, LLC
2680 West Market Street
Fairlawn, OH 44333

---

This demand is issued pursuant to Section 20 of the Federal Trade Commission Act, 15 U.S.C. § 57b-1, in the course of an investigation to determine whether there is, has been, or may be a violation of any laws administered by the Federal Trade Commission by conduct, activities or proposed action as described in Item 3.

**2. ACTION REQUIRED**

☐ You are required to appear and testify.

| LOCATION OF HEARING | YOUR APPEARANCE WILL BE BEFORE |
|---|---|
| | |
| | DATE AND TIME OF HEARING OR DEPOSITION |
| | |

☒ You are required to produce all documents described in the attached schedule that are in your possession, custody, or control, and to make them available at your address indicated above for inspection and copying or reproduction at the date and time specified below.

☒ You are required to answer the interrogatories or provide the written report described on the attached schedule. Answer each interrogatory or report separately and fully in writing. Submit your answers or report to the Records Custodian named in Item 4 on or before the date specified below.

☐ You are required to produce the tangible things described on the attached schedule.  Produce such things to the Records Custodian named in Item 4 on or before the date specified below.

DATE AND TIME THE DOCUMENTS, ANSWERS TO INTERROGATORIES, REPORTS, AND/OR TANGIBLE THINGS MUST BE AVAILABLE

**OCT 2 3 2017**

**3. SUBJECT OF INVESTIGATION**

See attached Schedule and attached resolutions.

---

| **4. RECORDS CUSTODIAN/DEPUTY RECORDS CUSTODIAN** | **5. COMMISSION COUNSEL** |
|---|---|
| Custodian:  Samuel Baker, Federal Trade Commission, 1111 Superior Avenue, Suite 200, Cleveland, OH 44114 | Harris A. Senturia Federal Trade Commission, 1111 Superior Avenue, Suite 200, Cleveland, OH 44114 (216) 263-3420 |
| Deputy Custodian:  Jon Miller Steiger, Federal Trade Commission, 1111 Superior Avenue, Suite 200, Cleveland, OH 44114 | |

| DATE ISSUED | COMMISSIONER'S SIGNATURE |
|---|---|
| 9/21/17 | *Maureen K. Ohlhausen* |

**INSTRUCTIONS AND NOTICES**

The delivery of this demand to you by any method prescribed by the Commission's Rules of Practice is legal service and may subject you to a penalty imposed by law for failure to comply. The production of documents or the submission of answers and report in response to this demand must be made under a sworn certificate, in the form printed on the second page of this demand, by the person to whom this demand is directed or, if not a natural person, by a person or persons having knowledge of the facts and circumstances of such production or responsible for answering each interrogatory or report question. This demand does not require approval by OMB under the Paperwork Reduction Act of 1980.

**PETITION TO LIMIT OR QUASH**

The Commission's Rules of Practice require that any petition to limit or quash this demand be filed within 20 days after service, or, if the return date is less than 20 days after service  prior to the return date. The original and twelve copies of the petition must be filed with the Secretary of the Federal Trade Commission, and one copy should be sent to the Commission Counsel named in Item 5.

**YOUR RIGHTS TO REGULATORY ENFORCEMENT FAIRNESS**

The FTC has a longstanding commitment to a fair regulatory enforcement environment. If you are a small business (under Small Business Administration standards), you have a right to contact the Small Business Administration's National Ombudsman at 1-888-REGFAIR (1-888-734-3247) or www.sba.gov/ombudsman regarding the fairness of the compliance and enforcement activities of the agency. You should understand, however, that the National Ombudsman cannot change, stop, or delay a federal agency enforcement action.

The FTC strictly forbids retaliatory acts by its employees, and you will not be penalized for expressing a concern about these activities.

**TRAVEL EXPENSES**

Use the enclosed travel voucher to claim compensation to which you are entitled as a witness for the Commission. The completed travel voucher and this demand should be presented to Commission Counsel for payment. If you are permanently or temporarily living somewhere other than the address on this demand and it would require excessive travel for you to appear, you must get prior approval from Commission Counsel.

A copy of the Commission's Rules of Practice is available online at http://bit.ly/FTCRulesofPractice. Paper copies are available upon request.

---

FTC Form **144**  (rev 12/15)

# Form of Certificate of Compliance*

I/We do certify that all of the documents, information and tangible things required by the attached Civil Investigative Demand which are in the possession, custody, control, or knowledge of the person to whom the demand is directed have been submitted to a custodian named herein.

If a document or tangible thing responsive to this Civil Investigative Demand has not been submitted, the objections to its submission and the reasons for the objection have been stated.

If an interrogatory or a portion of the request has not been fully answered or a portion of the report has not been completed, the objections to its submission and the reasons for the objections have been stated.

Signature _____

Title _____

Sworn to before me this day

_____     _____

_____
Notary Public

_____

*In the event that more than one person is responsible for complying with this demand, the certificate shall identify the documents for which each certifying individual was responsible. In place of a sworn statement, the above certificate of compliance may be supported by an unsworn declaration as provided for by 28 U.S.C. § 1746.

FTC Petition, Exhibit 2
- 05 -

## FEDERAL TRADE COMMISSION ("FTC")
## CIVIL INVESTIGATIVE DEMAND ("CID") SCHEDULE
### FTC File No. 1723195

**Meet and Confer:** You must contact FTC counsel, Harris Senturia (216-263-3420; hsenturia@ftc.gov), as soon as possible to schedule a meeting (telephonic or in person) to be held within fourteen (14) days after you receive this CID. At the meeting, you must discuss with FTC counsel any questions you have regarding this CID or any possible CID modifications that could reduce your cost, burden, or response time yet still provide the FTC with the information it needs to pursue its investigation. **FTC counsel will request that you give priority to responses to interrogatories and document requests pertaining to the Geniux Products, as defined herein.** The meeting also will address how to assert any claims of protected status (e.g., privilege, work-product, etc.) and the production of electronically stored information. You must make available at the meeting personnel knowledgeable about your information or records management systems, your systems for electronically stored information, custodians likely to have information responsive to this CID, and any other issues relevant to compliance with this CID.

**Document Retention:** You must retain all documentary materials used in preparing responses to this CID. The FTC may require the submission of additional documents later during this investigation. **Accordingly, you must suspend any routine procedures for document destruction and take other measures to prevent the destruction of documents** that are in any way relevant to this investigation, even if you believe those documents are protected from discovery. *See* 15 U.S.C. § 50; *see also* 18 U.S.C. §§ 1505, 1519.

**Sharing of Information:** The FTC will use information you provide in response to the CID for the purpose of investigating violations of the laws the FTC enforces. We will not disclose such information under the Freedom of Information Act, 5 U.S.C. § 552. We also will not disclose such information, except as allowed under the FTC Act (15 U.S.C. § 57b-2), the Commission's Rules of Practice (16 C.F.R. §§ 4.10 & 4.11), or if required by a legal obligation. Under the FTC Act, we may provide your information in response to a request from Congress or a proper request from another law enforcement agency. However, we will not publicly disclose such information without giving you prior notice.

**Manner of Production:** You may produce documentary material or tangible things by making them available for inspection and copying at your principal place of business. Alternatively, you may send all responsive documents and tangible things to **Mr. Samuel Baker, Federal Trade Commission, 1111 Superior Avenue, Suite 200, Cleveland, OH 44114.** If you are sending the materials, use a courier service such as Federal Express or UPS because heightened security measures delay postal delivery to the FTC. You must inform FTC counsel by email or telephone of how you intend to produce materials responsive to this CID at least five days before the return date.

**Certification of Compliance:** You or any person with knowledge of the facts and circumstances relating to the responses to this CID must certify that such responses are complete

-1-

by completing the "Form of Certificate of Compliance" set forth on the back of the CID form or by signing a declaration under penalty of perjury pursuant to 28 U.S.C. § 1746.

**Certification of Records of Regularly Conducted Activity:** Attached is a Certification of Records of Regularly Conducted Activity. Please execute and return this Certification with your response. Completing this certification may reduce the need to subpoena you to testify at future proceedings to establish the admissibility of documents produced in response to this CID.

**Definitions and Instructions:** Please review carefully the Definitions and Instructions that appear after the Specifications and provide important information regarding compliance with this CID.

## SUBJECT OF INVESTIGATION

Whether Fully Accountable, the Group A Entities, or the Group B Entities, each as defined herein, and related entities and individuals, have made or participated in making, in any respect, false, misleading, or unsubstantiated representations in connection with the marketing of consumer products, in violation of Sections 5 and 12 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45 and 52, or have engaged in deceptive or unfair acts or practices by charging or participating in the charging, in any respect, for consumer products without consumers' authorization, in violation of Section 5 of the FTC Act, and whether Commission action to obtain monetary relief would be in the public interest. See also attached resolutions.

## SPECIFICATIONS

**Applicable Time Period:** Unless otherwise directed, the applicable time period for the requests set forth below is from **July 1, 2014, until the date of full and complete compliance with this CID.**

## INTERROGATORIES

S-1.    State the Company's full legal name, principal address, telephone number, the date and state of incorporation or licensing, and all other names under which the Company has done business.

S-2.    Identify all officers, directors, members, principals, and owners of the Company and all shareholders with five percent or more ownership of the Company, stating each shareholder's percentage of ownership, since the Company was formed.

S-3.    Provide the names, addresses, officers, directors, owners, and states of incorporation of all of the Company's wholly or partially owned subsidiaries, parent companies, unincorporated divisions, joint ventures, partnerships, operations under assumed names, affiliates, and predecessor companies, and describe the relationship of each to the Company.

S-4.    Describe in detail each of the services the Company provided to the Group A Entities in connection with the Geniux Products. For each category of services identified (e.g., accounting, payment processing, business advising, advertising, etc.), provide:

-2-

      a.  The dates during which such services were provided;
      b.  The Group A Entity(ies) to which such services were provided; and
      c.  The names, telephone numbers, and e-mail addresses of all current or former
           employees of the Company who performed such services.

S-5.   With respect to each Geniux Product sold separately, state:

     a.    The total amount of gross annual sales and net annual sales in terms of units and
          dollars, during 2014, 2015, 2016, and 2017 to date;

     b.    The total dollar amount spent on advertising, marketing, or other promotion,
          including commissions or any other payments to ad servers, affiliate advertisers,
          and affiliate networks, during 2014, 2015, 2016, and 2017 to date; and

     c.    The total dollar amount spent on research and development during 2014, 2015,
          2016, and 2017 to date.

If you maintain financial data on a fiscal schedule that differs from the calendar year
schedule, provide this data according to those fiscal years and identify the dates of the
fiscal year.

S-6.   Describe in detail each of the services the Company provided to the Group A Entities in
connection with the Group A Other Consumer Products.  For each category of services
identified (e.g., accounting, payment processing, business advising, advertising, etc.),
provide:

      a.  The dates during which such services were provided;
      b.  The Group A Entity(ies) to which such services were provided; and
      c.  The names, telephone numbers, and e-mail addresses of all current or former
           employees of the Company who performed such services.

S-7.   With respect to each Group A Other Consumer Product sold separately, state:

     a.    The total amount of gross annual sales and net annual sales in terms of units and
          dollars, during 2014, 2015, 2016, and 2017 to date; and

     b.    The total dollar amount spent on advertising, marketing, or other promotion,
          including commissions or any other payments to ad servers, affiliate advertisers,
          and affiliate networks, during 2014, 2015, 2016, and 2017 to date.

If you maintain financial data on a fiscal schedule that differs from the calendar year
schedule, provide this data according to those fiscal years and identify the dates of the
fiscal year.

S-8.   Describe in detail each of the services the Company provided to the Group B Entities in
connection with the Group B Consumer Products.  For each category of services

identified (e.g., accounting, payment processing, business advising, advertising, etc.), provide:

    a.  The dates during which such services were provided;

    b.  The Group B Entity(ies) to which such services were provided; and

    c.  The names, telephone numbers, and e-mail addresses of all current or former employees of the Company who performed such services.

S-9.    With respect to each Group B Consumer Product sold separately, state:

    a.    The total amount of gross annual sales and net annual sales in terms of units and dollars, during 2014, 2015, 2016, and 2017 to date; and

    b.    The total dollar amount spent on advertising, marketing, or other promotion, including commissions or any other payments to ad servers, affiliate advertisers, and affiliate networks, during 2014, 2015, 2016, and 2017 to date.

If you maintain financial data on a fiscal schedule that differs from the calendar year schedule, provide this data according to those fiscal years and identify the dates of the fiscal year.

S-10.  Identify all persons at the Company who participated in preparing responses to this CID.

S-11.  If, for any document specification in this CID, documents that would have been responsive were destroyed, mislaid, transferred, deleted, altered, or overwritten:

    a.    Describe in detail the document;

    b.    State the date such document was destroyed, mislaid, transferred, deleted, altered, or overwritten;

    c.    Describe the circumstance under which such document was destroyed, mislaid, transferred, deleted, altered, or overwritten; and

    d.    Identify the person authorizing such action.

## DOCUMENTS

Produce the following documents. Where documents responsive to any specification below are stored in magnetic or electronic form, produce such documents in media as set forth in the attached **Federal Trade Commission Bureau of Consumer Protection Production Requirements.**

### Organization Charts/Personnel Directories

S-12.  A copy of each organization chart and personnel directory for the Company, including email addresses, in effect since July 1, 2014.

### Group A Entities – Geniux Products

S-13.  Documents sufficient to provide all contact or identifying information regarding any Group A Entity, including but not limited to: (a) name; (b) addresses used for business; (c) telephone and/or fax numbers; (d) Internet Protocol address log-in information; and (e) email addresses, instant messaging addresses, and/or website addresses used for business.

S-14.  Documents sufficient to identify any Group A Entity owner, officer, manager, employee, or agent, or other person acting on behalf of any Group A Entity.

S-15.  All communications relating to any Geniux Product, between you and any Group A Entity or any person purporting to represent any Group A Entity, whether internal or external, including but not limited to email communications and chat logs.

S-16.  All documents relating to contracts, applications, or agreements for any Group A Entity.

S-17.  Annual balance sheets and profit and loss statements for any Group A Entity during 2014, 2015, 2016, and 2017 to date.  If the Company maintains financial data on a fiscal schedule that differs from the calendar year schedule, provide this data according to those fiscal years and provide the dates of the fiscal year.

S-18.  Documents sufficient to show the gross and net sales calculations for any Group A Entity during 2014, 2015, 2016, and 2017 to date.

S-19.  The complete QuickBooks or similar bookkeeping software file for any Group A Entity.

S-20.  General and subsidiary ledgers for all Group A Entities.  For this document request, "general and subsidiary ledgers" includes any files created or recognized in the Company's accounting records or software, including but not limited to cash or cash equivalent accounts, accounts receivable, and accounts payable.

S-21.  Documents sufficient to show how the Company determined the annual expenditures for the advertising, marketing, or promotion, including through ad servers, affiliate advertisers, or affiliate networks, of the Geniux Products, during 2014, 2015, 2016, and 2017 to date.

S-22.  Documents sufficient to show any payments to any ad server, affiliate advertiser, affiliate network, or marketing technology provider relating to any of the Geniux Products, during 2014, 2015, 2016, and 2017 to date.

S-23.  All documents related to any payment responsive to Specification S-22, including but not

limited to: (a) the amounts of such payments; and (b) the method of payment, such as (i) bank and account number of the payment, (ii) the credit or debit card, and any accompanying identifying information concerning the credit or debit card holder, used to make payment, or (iii) account information for any other payment account from which you received payment for services.

S-24. All communications between you and any ad server, affiliate advertiser, affiliate network, or marketing technology provider related to any Geniux Products.

S-25. Documents sufficient to show all payment processing activity related to the Geniux Products, including but not limited to: (a) merchant applications, documents related to underwriting, and other documents related to the opening and closing of merchant accounts or other accounts used for payment processing; and (b) account statements or other documents sufficient to show (i) billing descriptors, (ii) reserves, (iii) transaction volumes and dollar amounts, (iv) refunds, and (v) chargebacks.

S-26. All communications between you and any Group A Entity, ISO, or any provider of payment processing services, related to any document responsive to Specification S-25.

S-27. All complaints or inquiries related to any Geniux Products, including complaints received from or through consumers, retailers, the Better Business Bureau, and governmental or regulatory bodies.

S-28. All communications related to any complaint responsive to Specification S-27.

**Group A Other Consumer Products**

S-29. All communications relating to affiliate advertisers, affiliate networks, or marketing technology providers, pertaining to any Group A Other Consumer Products, between you and any Group A Entity or any person purporting to represent any Group A Entity, whether internal or external, including but not limited to email communications and chat logs.

S-30. Documents sufficient to show how the Company determined the annual expenditures for the advertising, marketing, or promotion, including through ad servers, affiliate advertisers, or affiliate networks, of the Group A Other Consumer Products, during 2014, 2015, 2016, and 2017 to date.

S-31. Documents sufficient to show any payments to any ad server, affiliate advertiser, affiliate network, or marketing technology provider relating to any of the Group A Other Consumer Products, during 2014, 2015, 2016, and 2017 to date.

S-32. All communications between you and any ad server, affiliate advertiser, affiliate network, or marketing technology provider related to any Group A Other Consumer Products.

S-33. Documents sufficient to show all payment processing activity related to the Group A

Other Consumer Products, including but not limited to: (a) merchant applications, documents related to underwriting, and other documents related to the opening and closing of merchant accounts or other accounts used for payment processing; and (b) account statements or other documents sufficient to show (i) billing descriptors, (ii) reserves, (iii) transaction volumes and dollar amounts, (iv) refunds, and (v) chargebacks.

S-34.   All communications between you and any Group A Entity, ISO, or any provider of payment processing services, related to any document responsive to Specification S-33.

S-35.   All complaints related to any Group A Other Consumer Products, including complaints received from or through consumers, retailers, the Better Business Bureau, and governmental or regulatory bodies.

S-36.   All communications related to any complaint responsive to Specification S-35.

## Group B Entities – Group B Consumer Products

S-37.   Documents sufficient to provide all contact or identifying information regarding any Group B Entity, including but not limited to: (a) name; (b) addresses used for business; (c) telephone and/or fax numbers; (d) Internet Protocol address log-in information; and (e) email addresses, instant messaging addresses, and/or website addresses used for business.

S-38.   Documents sufficient to identify any Group B Entity owner, officer, manager, employee, or agent, or other person acting on behalf of any Group B Entity.

S-39.   All communications relating to affiliate networks, affiliate advertisers, and marketing technology providers, pertaining to any Group B Consumer Products, between you and any Group B Entity or any person purporting to represent any Group B Entity, whether internal or external, including but not limited to email communications and chat logs.

S-40.   All documents relating to contracts, applications, or agreements for any Group B Entity.

S-41.   Annual balance sheets and profit and loss statements for any Group B Entity during 2014, 2015, 2016, and 2017 to date.  If the Company maintains financial data on a fiscal schedule that differs from the calendar year schedule, provide this data according to those fiscal years and provide the dates of the fiscal year.

S-42.   Documents sufficient to show the gross and net sales calculations for any Group B Entity during 2014, 2015, 2016, and 2017 to date.

S-43.   The complete QuickBooks or similar bookkeeping software file for any Group B Entity.

S-44.   General and subsidiary ledgers for all Group B Entities.  For this document request, "general and subsidiary ledgers" includes any files created or recognized in the

-7-

Company's accounting records or software, including but not limited to cash or cash equivalent accounts, accounts receivable, and accounts payable.

S-45. Documents sufficient to show how the Company determined the annual expenditures for the advertising, marketing, or promotion, including through ad servers, affiliate advertisers, or affiliate networks, of the Group B Consumer Products, during 2014, 2015, 2016, and 2017 to date.

S-46. Documents sufficient to show any payments to any ad server, affiliate advertiser, affiliate network, or marketing technology provider relating to any of the Group B Consumer Products, during 2014, 2015, 2016, and 2017 to date.

S-47. All communications between you and any ad server, affiliate advertiser, affiliate network, or marketing technology provider related to any Group B Consumer Products.

S-48. Documents sufficient to show all payment processing activity related to the Group B Consumer Products, including but not limited to: (a) merchant applications, documents related to underwriting, and other documents related to the opening and closing of merchant accounts or other accounts used for payment processing; and (b) account statements or other documents sufficient to show (i) billing descriptors, (ii) reserves, (iii) transaction volumes and dollar amounts, (iv) refunds, and (v) chargebacks.

S-49. All communications between you and any Group B Entity, ISO, or any provider of payment processing services, related to any document responsive to Specification S-48.

S-50. All complaints related to any Group B Consumer Products, including complaints received from or through consumers, retailers, the Better Business Bureau, and governmental or regulatory bodies.

S-51. All communications related to any complaint responsive to Specification S-50.

## DEFINITIONS

The following definitions apply to this CID:

D-1. **"Company," "You," "Your,"** or **"Fully Accountable"** means **Fully Accountable, LLC,** its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, members, employees, agents, consultants, and other persons working for or on behalf of the foregoing, including, but not limited to, Christopher Giorgio and Rachel Scava.

D-2. **"Document"** means the complete original, all drafts, and any non-identical copy, whether different from the original because of notations on the copy, different metadata, or otherwise, of any item covered by 15 U.S.C. § 57b-1(a)(5), 16 C.F.R. § 2.7(a)(2), and Federal Rule of Civil Procedure 34(a)(1)(A).

-8-

D-3.  "Identify" or "the identity of" requires identification of (a) natural persons by name, title, present business affiliation, present business address, telephone number, and email address or, if a present business affiliation or present business address is not known, the last known business and home addresses; and (b) businesses or other organizations by name, address, and the identities of your contact persons at the business or organization.

D-4.  "Advertisement" or "Advertising" or "Ad" means any written or verbal statement, illustration, or depiction that promotes the sale of a good or service or is designed to increase consumer interest in a brand, good, or service. Advertising media includes, but is not limited to: packaging and labeling; promotional materials; print; television; radio; and Internet, social media, and other digital content.

D-5.  "Ad server" shall mean any person or entity that formerly or currently stores, maintains, and serves online advertisements (i.e., places advertisements on websites or other digital platforms) on behalf of another. The ad server may use an automated bidding system and may provide additional services, such as reporting regarding the dissemination and performance of particular advertisements.

D-6.  "Affiliate advertiser" or "publisher" shall mean any entity or person that formerly or currently advertises, promotes, or otherwise markets the products, services, or programs of any of the Geniux Entities, for consideration, either by direct arrangement with any Geniux Entity or through an affiliate network, and in consideration for which any Geniux Entity or affiliate network pays or promises to pay pursuant to agreed-upon means, which include: (1) a share of any Geniux Entity's revenues that derive from sales to consumers who viewed or clicked on an affiliate advertiser's advertisements for any Geniux Entity's products, services, or programs; and (2) fees for specific consumer actions, such as visiting any Geniux Entity's website, purchasing a product from any Geniux Entity, or signing up for a trial offer promoted by any Geniux Entity.

D-7.  "Affiliate network" shall mean any entity or person that provides or provided services connecting any advertiser or merchant (i.e., sellers of products, services or programs), including any of the Geniux Entities, and affiliate advertisers and that compensates or arranges for the compensation of affiliate advertisers based on agreed-upon means, which include: (1) a share of any Geniux Entity's revenues that derive from sales to consumers who viewed or clicked on an affiliate advertiser's advertisements for any Geniux Entity's products, services, or programs; and (2) fees for specific consumer actions, such as visiting any Geniux Entity's website, purchasing a product from any Geniux Entity, or signing up for a trial offer promoted by any Geniux Entity.

D-8.  "Chargeback" means a transaction that a card issuer returns as a financial liability to an acquiring or merchant bank, usually because of a disputed transaction. The acquirer may then return or "charge back" the transaction to the merchant.

D-9.  "Group A Entity(ies)" shall mean any or all of the following: Innovated Health LLC, Global Community Innovations LLC, Premium Health Supplies, LLC, Buddha My Bread LLC, Innovated Fulfillment LLC, Vista Media LLC, Emerging Nutrition Inc., ShipSmart LLC, Guerra Company LLC, ASH Abbas LLC, and Your Healthy Lifestyle LLC, their wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, successors, and affiliates, and all directors, officers, members, employees,

-9-

agents, consultants, and other persons working for or on behalf of the foregoing, including, but not limited to, Fred Guerra, Lanty Gray, Rafat Abbas, Ashraf Abbas, Robby Salaheddine, and Rachel Scava.

D-10.  "Group B Entity(ies)" shall mean any or all of the following:  Leading Health Supplements, LLC (also dba Health Supplements), AMLK Holdings, LLC, General Health Supplies, LLC, Natural Health Supplies, LLC, BHCO Holdings, LLC, and Consumer's Choice Health, LLC, their wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, successors, and affiliates, and all directors, officers, members, employees, agents, consultants, and other persons working for or on behalf of the foregoing.

D-11.  "Geniux Product(s)" shall mean any products marketed or offered for sale by any of the Group A Entities that purport to prevent or mitigate cognitive decline and related diseases or conditions, including, but not limited to, Geniux, EVO, Xcel, and Ion-Z.

D-12.  "Group A Other Consumer Product(s)" shall mean any products marketed or offered for sale to consumers by any of the Group A Entities, other than the Geniux Products.  Group A Other Consumer Product(s) includes, but is not limited to, products marketed as containing Forskolin or Garcinia Cambogia.

D-13.  "Group B Consumer Product(s)" shall mean any products marketed or offered for sale to consumers by any of the Group B Entities.  Group B Consumer Product(s) includes, but is not limited to, products marketed as Pura Bella, Allure Beauty, Hydra Eyes Cream, Phyto-Renew, or Cognimaxx, and products marketed as containing Forskolin or Garcinia Cambogia.

D-14.  "Independent Sales Organization" or "ISO" means any person or entity that markets payment processing services, refers merchants for payment processing services, or otherwise assists merchants in obtaining payment processing services.

D-15.  "Marketing technology provider" shall mean any entity or person that provides or provided products or services to track or analyze digital marketing results or return on investment (ROI) relating to any Geniux Product, Group A Other Consumer Product, or Group B Consumer Product, including, but not limited to: (1) collecting and analyzing data about customer traffic, affiliate advertiser or network attribution, purchases, or payments; (2) measuring cross-channel cost and performance; or (3) generating reports regarding digital marketing tracking or results.

D-16.  "Payment Processing" means the performance of any function of collecting, formatting, charging, transmitting, or processing, whether directly or indirectly, a cardholder's payment for goods or services.  Payment processing includes:  providing a merchant, financial institution, person, or entity, directly or indirectly, with the access or means to charge or debit a cardholder's account; monitoring, tracking, and reconciling payments, returns, refunds, and chargebacks; providing refund services to a merchant; and disbursing funds and receipts to merchants.

D-17.  "Publisher website" shall mean any entity or person that publishes affiliate advertisers' advertisements on its website or other digital platform, in exchange for compensation.

-10-

# INSTRUCTIONS

I-1.  **Petitions to Limit or Quash:**  You must file any petition to limit or quash this CID with the Secretary of the FTC no later than twenty (20) days after service of the CID, or, if the return date is less than twenty (20) days after service, prior to the return date. Such petition must set forth all assertions of protected status or other factual and legal objections to the CID and comply with the requirements set forth in 16 C.F.R. § 2.10(a)(1) – (2). **The FTC will not consider petitions to quash or limit if you have not previously met and conferred with FTC staff and, absent extraordinary circumstances, will consider only issues raised during the meet and confer process.**  16 C.F.R. § 2.7(k); *see also* § 2.11(b).  **If you file a petition to limit or quash, you must still timely respond to all requests that you do not seek to modify or set aside in your petition.**  15 U.S.C. § 57b-1(f); 16 C.F.R. § 2.10(b).

I-2.  **Withholding Requested Material / Privilege Claims:**  If you withhold from production any material responsive to this CID based on a claim of privilege, work product protection, statutory exemption, or any similar claim, you must assert the claim no later than the return date of this CID, and you must submit a detailed log, in a searchable electronic format, of the items withheld that identifies the basis for withholding the material and meets all the requirements set forth in 16 C.F.R. § 2.11(a) – (c).  The information in the log must be of sufficient detail to enable FTC staff to assess the validity of the claim for each document, including attachments, without disclosing the protected information.  If only some portion of any responsive material is privileged, you must submit all non-privileged portions of the material.  Otherwise, produce all responsive information and material without redaction.  16 C.F.R. § 2.11(c).  The failure to provide information sufficient to support a claim of protected status may result in denial of the claim.  16 C.F.R. § 2.11(a)(1).

I-3.  **Modification of Specifications:**  The Bureau Director, a Deputy Bureau Director, Associate Director, Regional Director, or Assistant Regional Director must agree in writing to any modifications of this CID.  16 C.F.R. § 2.7(l).

I-4.  **Scope of Search:**  This CID covers documents and information in your possession or under your actual or constructive custody or control, including documents and information in the possession, custody, or control of your attorneys, accountants, directors, officers, employees, service providers, and other agents and consultants, whether or not such documents or information were received from or disseminated to any person or entity.

I-5.  **Identification of Responsive Documents:**  For specifications requesting production of documents, you must identify in writing the documents that are responsive to the specification. Documents that may be responsive to more than one specification of this CID need not be produced more than once.  If any documents responsive to this CID have been previously supplied to the FTC, you may identify the documents previously provided and the date of submission.

I-6.  **Maintain Document Order:**  You must produce documents in the order in which they appear in your files or as electronically stored.  If documents are removed from their original

-11-

folders, binders, covers, containers, or electronic source, you must specify the folder, binder, cover, container, or electronic media or file paths from which such documents came.

**I-7.  Numbering of Documents:** You must number all documents in your submission with a unique identifier such as a bates number or a document ID.

**I-8.  Production of Copies:** Unless otherwise stated, you may submit copies in lieu of original documents if they are true, correct, and complete copies of the originals and you preserve and retain the originals in their same state as of the time you received this CID. Submission of copies constitutes a waiver of any claim as to the authenticity of the copies should the FTC introduce such copies as evidence in any legal proceeding.

**I-9.  Production in Color:** You must produce copies of advertisements in color, and you must produce copies of other materials in color if necessary to interpret them or render them intelligible.

**I-10.  Electronically Stored Information:** See the attached FTC Bureau of Consumer Protection Production Requirements ("Production Requirements"), which detail all requirements for the production of electronically stored information to the FTC. You must discuss issues relating to the production of electronically stored information with FTC staff **prior to** production.

**I-11.  Sensitive Personally Identifiable Information ("Sensitive PII") or Sensitive Health Information ("SHI"):** If any materials responsive to this CID contain Sensitive PII or SHI, please contact FTC counsel before producing those materials to discuss whether there are steps you can take to minimize the amount of Sensitive PII or SHI you produce, and how to securely transmit such information to the FTC.

Sensitive PII includes an individual's Social Security number; an individual's biometric data (such as fingerprints or retina scans, but not photographs); and an individual's name, address, or phone number in combination with one or more of the following:  date of birth, Social Security number, driver's license or state identification number (or foreign country equivalent), passport number, financial account number, credit card number, or debit card number. SHI includes medical records and other individually identifiable health information relating to the past, present, or future physical or mental health or conditions of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual.

**I-12.  Interrogatory Responses:** For specifications requesting answers to written interrogatories, answer each interrogatory and each interrogatory subpart separately and fully, in writing, and under oath.

**I-13.  Submission of Documents in Lieu of Interrogatory Answers:** You may answer any written interrogatory by submitting previously existing documents that contain the information requested in the interrogatory so long as you clearly indicate in each written interrogatory response which documents contain the responsive information. For any interrogatory that asks you to identify documents, you may, at your option, produce the documents responsive to the

interrogatory so long as you clearly indicate the specific interrogatory to which such documents are responsive.

## Federal Trade Commission Bureau of Consumer Protection
## Production Requirements
### Revised July 2017

In producing information in response to this CID, you must comply with the following production requirements, unless the FTC agrees otherwise. If you have any questions about these requirements, please contact FTC Counsel before production.

## Production Format

1. **General Format:** Provide load-ready electronic productions with: (a) an Opticon image load file (.OPT) containing a line for every image file; and (b) a delimited data load file (.DAT) containing a line for every document, with bates references, metadata fields, and native file links, where applicable.

2. **Electronically Stored Information ("ESI"):** Documents stored in electronic format in the ordinary course of business must be produced in the following format:

   a. For ESI other than the categories described below, submit in native electronic format with extracted text or Optical Character Recognition (OCR), all metadata, and corresponding image renderings converted to Group IV, 300 DPI, single-page Tagged Image File Format (TIFF) or color JPEG images (if color is necessary to interpret the contents or render them intelligible).

   b. For Microsoft Excel, Access, or PowerPoint files, submit in native format with extracted text and metadata. Data compilations in Excel spreadsheets or in delimited text formats must contain all underlying data, formulas, and algorithms without redaction.

   c. For other spreadsheet, database, presentation, or multimedia formats; instant messages; or proprietary applications, discuss production format during the meet and confer.

3. **Hard Copy Documents:** Documents stored in hard copy in the ordinary course of business must be scanned and submitted as 300 DPI individual single page TIFFs (or color JPGs when necessary to interpret documents or render them intelligible), with corresponding document-level OCR text and logical document determination in an accompanying load file.

4. **Extracted Text/OCR:** Submit text as document-level text files, named for the beginning bates number, and organized into a folder separate from images. We cannot accept Unicode text files.

5. **Document Identification:** Provide a unique DocId or bates number for each hard copy or electronic document, consisting of a prefix and a consistent number of numerals using leading zeros. Do not use a space to separate the prefix from numbers.

6. **Attachments:** Preserve the parent/child relationship by producing attachments as separate documents, numbering them consecutively to the parent email, and including a reference to all attachments.

7. **Metadata Production:** For each document submitted electronically, include standard metadata fields in a standard ASCII delimited data load file. The first line of the data load file shall include the field names. _Submit date and time data in separate fields._ Use these delimiters in delimited data load files:

| Description | Symbol | ASCII Character |
|---|---|---|
| Field Separator | < | 20 |
| Quote Character | þ | 254 |

-A1-

| Multi Entry delimiter | ® | 174 |
| <Return> Value in data | ~ | 126 |

8. **De-duplication:** Do not use de-duplication or email threading software without FTC counsel approval.

9. **Password-Protected Files:** Remove passwords prior to production. If password removal is not possible, provide the original and production filenames and the password under separate cover.

10. **Sensitive PII or SHI:** Use data encryption to protect any Sensitive PII or SHI (as defined in the CID Schedule). Provide encryption passwords in advance of delivery, under separate cover.

## Producing and Submitting Media to the FTC

1. Prior to production, scan all media and data for viruses and confirm the media and data are virus-free.

2. For productions smaller than 50 GB, the FTC can accept electronic file transfer via FTC-hosted secure file transfer protocol (Accellion or SecureZip). Contact FTC counsel to request this option. The FTC cannot accept files via Dropbox, Google Drive, OneDrive, or other third-party file transfer sites.

3. Use the least amount of media necessary for productions. Acceptable media formats are CDs, DVDs, flash drives, and hard drives. Format all media for use with Windows 7.

4. Use a courier service (e.g., Federal Express, UPS) because heightened security measures delay postal delivery. Mark the exterior of all packages containing electronic media with the following:

MAGNETIC MEDIA – DO NOT X-RAY
MAY BE OPENED FOR INSPECTION

5. Provide a production transmittal letter with each production that includes:

   a. Production volume name (e.g., Volume 1), date of production, and numeric DocID number range of all documents included in the production;
   b. List of custodians and the DocID number range for each custodian;
   c. Total number of records and all underlying images, emails, and associated attachments, native files, and databases in the production
   d. List of load file fields in the order in which they are organized in the data file.

-A2-

UNITED STATES OF AMERICA
FEDERAL TRADE COMMISSION

COMMISSIONERS:     Jon Leibowitz, Chairman
Pamela Jones Harbour
William E. Kovacic
J. Thomas Rosch

RESOLUTION DIRECTING USE OF COMPULSORY PROCESS IN A NONPUBLIC
INVESTIGATION OF UNNAMED PERSONS ENGAGED DIRECTLY OR
INDIRECTLY IN THE ADVERTISING OR MARKETING OF DIETARY
SUPPLEMENTS, FOODS, DRUGS, DEVICES, OR ANY OTHER PRODUCT OR
SERVICE INTENDED TO PROVIDE A HEALTH BENEFIT OR TO AFFECT THE
STRUCTURE OR FUNCTION OF THE BODY

File No.  0023191

Nature and Scope of Investigation:

    To investigate whether unnamed persons, partnerships, or corporations, or others engaged directly or indirectly in the advertising or marketing of dietary supplements, foods, drugs, devices, or any other product or service intended to provide a health benefit or to affect the structure or function of the body have misrepresented or are misrepresenting the safety or efficacy of such products or services, and therefore have engaged or are engaging in unfair or deceptive acts or practices or in the making of false advertisements, in or affecting commerce, in violation of Sections 5 and 12 of the Federal Trade Commission Act, 15 U.S.C. §§ 45 and 52. The investigation is also to determine whether Commission action to obtain redress for injury to consumers or others would be in the public interest.

    The Federal Trade Commission hereby resolves and directs that any and all compulsory processes available to it be used in connection with this investigation for a period not to exceed ten (10) years from the date of issuance of this resolution. The expiration of this ten (10) year period shall not limit or terminate the investigation or the legal effect of any compulsory process issued during the ten (10) year period. The Federal Trade Commission specifically authorizes the filing or continuation of actions to enforce any such compulsory process after expiration of the ten year period.

    Authority to conduct investigation:

    Sections 6, 9, 10, and 20 of the Federal Trade Commission Act, 15 U.S.C. §§ 46, 49, 50, and 57b-1, as amended; FTC Procedures and Rules of Practice, 16 C.F.R. § 1.1 et seq. and supplements thereto.

By direction of the Commission.

*Donald S. Clark*

Donald S. Clark
Secretary

Issued:  August 13, 2009

UNITED STATES OF AMERICA
BEFORE THE FEDERAL TRADE COMMISSION

COMMISSIONERS:    Edith Ramirez, Chairwoman
                  Maureen K. Ohlhausen
                  Terrell McSweeny

RESOLUTION DIRECTING USE OF COMPULSORY PROCESS IN NON-PUBLIC
INVESTIGATION OF UNNAMED PERSONS, PARTNERSHIPS OR CORPORATIONS
ENGAGED IN THE DECEPTIVE OR UNFAIR USE OF E-MAIL, METATAGS,
COMPUTER CODE OR PROGRAMS, OR DECEPTIVE OR UNFAIR PRACTICES
INVOLVING INTERNET-RELATED GOODS OR SERVICES

File No. 9923259

Nature and Scope of Investigation:

To determine whether unnamed persons, partnerships or corporations have been or are engaged in the deceptive or unfair use of e-mail, metatags, computer code or programs, or deceptive or unfair practices involving Internet-related goods or services, in violation of Sections 5 or 12 of the Federal Trade Commission Act, 15 U.S.C. §§ 45, 52, as amended. The investigation is also to determine whether Commission action to obtain equitable monetary relief for injury to consumers or others would be in the public interest.

The Federal Trade Commission hereby resolves and directs that any and all compulsory processes available to it be used in connection with this investigation for a period not to exceed five years from the date of issuance of this resolution. The expiration of this five-year period shall not limit or terminate the investigation or the legal effect of any compulsory process issued during the five-year period. The Federal Trade Commission specifically authorizes the filing or continuation of actions to enforce any such compulsory process after the expiration of the five-year period.

Authority to Conduct Investigation:

Sections 6, 9, 10, and 20 of the Federal Trade Commission Act, 15 U.S.C. §§ 46, 49, 50, and 57b-1, as amended; FTC Procedures and Rules of Practice, 16 C.F.R. Part 1.1 et seq. and supplements thereto.

By direction of the Commission.

Donald S. Clark
Secretary

Issued:  August 1, 2016

UNITED STATES OF AMERICA
BEFORE THE FEDERAL TRADE COMMISSION

COMMISSIONERS:      Edith Ramirez, Chairwoman
                    Julie Brill
                    Maureen K. Ohlhausen
                    Joshua D. Wright

RESOLUTION DIRECTING USE OF COMPULSORY PROCESS IN A NON-PUBLIC
INVESTIGATION OF UNAUTHORIZED CHARGES TO CONSUMERS' ACCOUNTS

File No. 082-3247

Nature and Scope of Investigation:

To determine whether unnamed persons, partnerships, corporations, or others have
engaged in or are engaging in deceptive or unfair acts or practices in or affecting commerce, in
connection with making unauthorized charges or debits to consumers' accounts, including
unauthorized charges or debits to credit card accounts, bank accounts, investment accounts, or
any other accounts used by consumers to pay for goods and services, in violation of Section 5 of
the Federal Trade Commission Act, 15 U.S.C. § 45, and/or the Electronic Fund Transfer Act, 15
U.S.C. § 1693, *et seq.*  The investigation is also to determine whether Commission action to
obtain monetary relief, including consumer redress, disgorgement, or civil penalties, would be in
the public interest.

The Federal Trade Commission hereby resolves and directs that any and all compulsory
processes available to it be used in connection with this investigation for a period not to exceed
five (5) years from the date of issuance of this resolution.  The expiration of this five-year period
shall not limit or terminate the investigation or the legal effect of any compulsory process issued
during the five-year period.  The Federal Trade Commission specifically authorizes the filing or
continuation of actions to enforce any such compulsory process after the expiration of the five-
year period.

Authority to Conduct Investigation:

Sections 6, 9, 10, and 20 of the Federal Trade Commission Act, 15 U.S.C. §§ 46, 49, 50,
and 57b-1, FTC Procedures and Rules of Practice, 16 C.F.R. § 1.1 *et seq.*, and supplements
thereto, Section 917(c) of the Electronic Fund Transfer Act, 15 U.S.C. § 1693o(c), and
Regulation E, 12 C.F.R. § 205.1 *et seq.*, and supplements thereto.

By direction of the Commission.

Donald S. Clark
Secretary

Issued:  September 20, 2013

## CERTIFICATION OF RECORDS OF REGULARLY CONDUCTED ACTIVITY
### Pursuant to 28 U.S.C. § 1746

1.    I, _____, have personal knowledge of the facts set forth below and am competent to testify as follows:

2.    I have authority to certify the authenticity of the records produced by Fully Accountable, LLC (the "Company") and attached hereto.

3.    The documents produced and attached hereto by the Company are originals or true copies of records of regularly conducted activity that:

   a)    Were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;

   b)    Were kept in the course of the regularly conducted activity of the Company; and

   c)    Were made by the regularly conducted activity as a regular practice of the Company.

I certify under penalty of perjury that the foregoing is true and correct.


Date: _____          _____
                                        Signature