**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**, Petitioner, | Misc. No. 5:18mc54 |
| v. | JUDGE SARA LIOI Magistrate Judge George J. Limbert |
| **FULLY ACCOUNTABLE, LLC,** Respondent. | |

**FEDERAL TRADE COMMISSION'S OPPOSITION TO FULLY
ACCOUNTABLE, LLC'S PETITION TO ENFORCE PETITION TO QUASH
AND LIMIT**

Respondent Fully Accountable LLC's Petition to Enforce Petition to Quash
and Limit (Petition) asks this Court to overturn a detailed and reasoned order by
the Commission and to quash two civil investigative demands (CIDs) issued to the
company and a former employee.

This request cannot be squared, however, with the longstanding and widely-
accepted principle that a recipient of process may not challenge that process before
the agency seeks enforcement. As explained by courts, including the Supreme
Court, the Sixth Circuit, and the majority of other courts of appeals (including the
Third Circuit in *Wearly v. FTC*, a case on which Fully Accountable chiefly relies), a

process recipient may challenge administrative compulsory process only *after* the agency has commenced a proceeding to enforce that process. Thus, Fully Accountable's Petition is improperly before this Court and, indeed, outside of the Court's jurisdiction, and must be denied for that reason alone.

This denial is also proper because the FTC is concurrently filing a separate enforcement action to enforce the two CIDs at issue and that proceeding is the appropriate vehicle for Fully Accountable to raise its challenges to the Commission's lawful process.[1] Indeed, important policy considerations require following Congress's scheme for enforcing FTC compulsory process; these include deference to the agency's investigative authority and discretion to commence such proceedings, along with a recognition of the burdens imposed on the courts and agencies by preenforcement litigation. To do otherwise would only encourage more preenforcement challenges like Fully Accountable's, frustrating Congress's intent and imposing significant costs on both courts and agencies. Nor would it benefit Fully Accountable, which faces no prejudice from compliance with the FTC Act:  the company faces no penalty for noncompliance while an FTC-initiated proceeding is pending and it can raise any claims it has against the CIDs then.

## I.   **FACTUAL BACKGROUND**

The FTC began this proceeding in order to enforce a 2017 CID issued to Fully Accountable as part of an investigation into whether that company has engaged in

---

[1]    That new enforcement proceeding was filed today, February 4, 2019, under the caption, *Federal Trade Commission v. Fully Accountable, LLC et al.,* 5:19-mc-00021-DCN (N.D. Ohio).  That case names both Fully Accountable and Sarah Scava as Respondents.

unfair or deceptive acts that violate Section 5 of the FTC Act in connection with the sale and marketing of dietary supplements; the FTC required judicial intervention because Fully Accountable had failed to produce documents or complete answers to interrogatories requested by the CID. *See*, *e.g.*, Doc. 1 at 8-11.[2] This Court enforced that CID by order dated August 13, 2018, and directed Fully Accountable to produce "all responsive documents and information required by the civil investigative demand" by August 23, 2018. Doc. 14 at 2.

Fully Accountable did make a timely production in response to that order, but the investigating FTC staff identified deficiencies and inconsistencies in the production. *See* Second Declaration of Harris A. Senturia, Opposition Exhibit (Opp. Ex.) 1, ¶¶ 8-9. The agency's concern that Fully Accountable had not, in fact, complied with this Court's order, plus the need to obtain additional information for the investigation, led the Commission to issue two additional CIDs, one to Fully Accountable and one to an individual named Sarah Scava, a former employee of Fully Accountable. Opp. Ex. 1, ¶¶ 10-11; Doc. 17 at 1-2. Unlike the FTC's original 2017 CID that is the subject of this proceeding, these additional CIDs, issued on September 10, 2018, sought only testimony from the company and Ms. Scava. Opp. Ex. 1, ¶¶ 10-11; Docs. 21-2 at 4 (Fully Accountable CID); 21-3 at 4 (Sarah Scava CID).

Neither Fully Accountable nor Ms. Scava complied with the CIDs. Instead, on October 5, 2018, Fully Accountable filed with the Commission an administrative

---

[2]     All citations to docket entries refer to page numbers in ECF headers.

petition to limit or quash the CID it received.[3] Opp. Ex. 1, ¶ 13; Doc. 19 at 2. That same day, Elevated Health, LLC, a non-party with ties to Ms. Scava, filed with the Commission a similar petition to limit or quash the CID issued to Ms. Scava. Opp. Ex. 1, ¶ 13; Doc. 19 at 2. On November 19, 2018, the Commission denied both petitions in a detailed seven-page opinion and ordered both recipients to appear and provide testimony. Opp. Ex. 1, ¶ 14; Doc. 19 at 2-3.

Fully Accountable and Ms. Scava did not comply with this order, either. Instead, Fully Accountable filed the instant "Petition to Enforce Petition to Quash and Limit" that asks this Court to enforce the administrative petitions filed with the Commission and quash or limit the September 2018 CIDs.[4] Doc. 21. At base, then, Fully Accountable wants this Court to substitute its judgment for that of the Commission and decide to what extent—if at all—the Commission is entitled to a response to its CIDs.[5]

---

[3]     The FTC's Rules of Practice allow a recipient of a CID to file an administrative "petition to limit or quash" that process. *See* 16 C.F.R. § 2.10.

[4]     This Petition is inconsistent in its requested relief. The Petition itself states that it was filed by Fully Accountable and seeks relief from that CID but the attached Memorandum of Law and Proposed Order also ask this Court to quash or limit the CID to Ms. Scava. *Compare* Doc. 21 at 7 *with* Doc. 21 at 20, Doc. 21-8.

[5]     The underlying legal theory of Fully Accountable's Petition is not clear. Typically, parties filing such preenforcement challenges do so by filing a separate action to enjoin the FTC's enforcement of its process. *See*, *e.g.*, *FTC v. Claire Furnace Co.* 274 U.S. 160, 165-66 (1927). Thus, arguably, Fully Accountable's Petition—which concerns two CIDs not previously at issue in this proceeding—is not properly before this Court because it should have been filed independently. *See, e.g.*, *Zang v. Zang*, No. 1:11-CV-884, 1:12-cv-629, 2013 WL 3975765, at *7 (S.D. Ohio Aug. 1, 2013) (granting motion to strike pleading on procedural grounds). Given Fully Accountable's choice of proceeding, however, the FTC thus construes Fully

At the time Fully Accountable filed its Petition, the FTC had not yet undertaken a proceeding to obtain judicial enforcement of the two 2018 CIDs for testimony. Concurrently with this filing, however, the FTC is commencing in this Court a separate proceeding to enforce those CIDs.[6]

## II.   ARGUMENT

### A.   Fully Accountable's Petition Is Not Properly Before This Court.

It is well established that the recipient of administrative investigative process cannot short-circuit a statutorily-prescribed process for obtaining judicial review by instituting its own preenforcement challenge. "Resort to a court by recipients of investigative subpoenas before an action for enforcement has commenced is generally disfavored." *Wearly v. FTC*, 616 F.2d 662, 665 (3d Cir. 1980).

The FTC Act affords Fully Accountable multiple levels of review within which to challenge the FTC's CID in the course of an FTC-initiated enforcement proceeding. 15 U.S.C. § 57b-1(h). The Commission's investigative authority arises from the FTC Act, which authorizes the FTC to issue civil investigative demands to compel production of documents, testimony, tangible things, and written answers to questions related to its investigations of potential legal violations. 15 U.S.C. § 57b-1. FTC CIDs, however, are not self-enforcing. Congress has authorized the FTC to

Accountable's Petition as a motion to quash the recent CIDs, an interpretation consistent with the docketing of the filing.

[6]     The Commission's filings in that new enforcement proceeding include a "Notice of Related Case" identifying this case.  *See FTC v. Fully Accountable, LLC et al.*, 5:19-mc-00021-DCN (N.D. Ohio), Doc. 2.

seek judicial enforcement of its CIDs in federal district court. *See* 15 U.S.C. §§ 57b-1(e), (h).  Any resulting district court order is final and appealable under 28 U.S.C. § 1291. 15 U.S.C. 57b-1(h) ("Any final order so entered shall be subject to appeal pursuant to section 1291 of title 28.").

Such a proceeding, however, is the *only* vehicle by which a CID recipient can raise legal challenges to the process:

> You may not bypass the specific method that Congress has provided for reviewing adverse agency action . . . ; the specific statutory method . . . is *exclusive.* Therefore the target of [an] investigation may not maintain a suit . . . to enjoin the investigation but must wait till the government sues to enforce a subpoena or other compulsory process in aid of the investigation, since that is the method of judicial review of FTC investigations that Congress has prescribed.

*General Finance Corp. v. FTC*, 700 F.2d 366, 369 (7th Cir. 1983) (citing, *inter alia*, *FTC v. Claire Furnace Co.*, 274 U.S. 160, 173-74 (1927)) (emphasis added; citations omitted) (Posner, J.).

The Supreme Court has twice held that the availability of such procedures requires the dismissal of preenforcement proceedings and similar suits brought against investigating agencies, including the Commission. In *FTC v. Claire Furnace Co.*, 274 U.S. 160 (1927), multiple recipients of FTC process filed suit in equity to enjoin the Commission from enforcing its process. The Supreme Court rejected these suits and ordered them dismissed, finding that the FTC Act provided defendants sufficient opportunities to raise their claims:

> There was nothing which the Commission could have done to secure enforcement of the challenged orders except to request the Attorney General to institute proceedings for a mandamus or supply him with the necessary facts for an action to enforce the incurred forfeitures. If,

> exercising his discretion, he had instituted either proceeding, the
> defendant therein would have been fully heard, and could have
> adequately and effectively presented every ground of objection sought
> to be presented now. Consequently the trial court should have refused
> to entertain the bill in equity for an injunction.

274 U.S. at 173-74.[7] Given this remedy, the Court held that defendants' action was

not maintainable. *Id.* at 174.

The Court then revisited and reaffirmed this principle in *Reisman v. Caplin*,

375 U.S. 440 (1964). That case involved a challenge to an IRS summons but the

Court nonetheless applied the same approach as *Claire Furnace*. It held that,

because the Internal Revenue Code enabled the Service to commence an

enforcement proceeding, that provided a sufficient remedy: "Any enforcement action

under this section would be an adversary proceeding affording a judicial

determination of the challenges to the summons and giving complete protection to

the witness." 375 U.S. at 446.

Every court of appeals that has considered this rule has followed the

Supreme Court's teaching. *See American Motors Corp. v. FTC*, 601 F.2d 1329, 1335-

37 (6th Cir. 1979); *accord Google, Inc. v. Hood*, 822 F.3d 212, 225 (5th Cir. 2016);

*Schulz v. United States*, 395 F.3d 463, 464-65 (2d Cir. 2005); *Office of Thrift*

*Supervision, Dept. of Treasury v. Dobbs*, 931 F.2d 956, 957 (D.C. Cir. 1991); *Belle*

---

[7]     In so ruling, the Court interpreted Section 9 of the FTC Act, which at the
time authorized the Commission to seek enforcement of subpoenas through
application to the Attorney General. 15 U.S.C. § 49. In this proceeding, the
Commission issued a CID, a different type of process. Under the FTC Act, the
Commission has independent litigating authority to seek enforcement of a CID and
need not apply to the Attorney General. 15 U.S.C. § 57b-1(e). This statutory
distinction does not affect the applicability of *Claire Furnace*.

*Fourche Pipeline Co. v. United States*, 751 F.2d 332, 334-35 (10th Cir. 1984); *General Finance Corp. v. FTC*, 700 F.2d 366, 368 (7th Cir. 1983); *Wearly v. FTC*, 616 F.2d 662, 665 (3d Cir. 1980); *Blue Ribbon Quality Meats, Inc. v. FTC*, 560 F.2d 874, 876 (8th Cir. 1977); *Howfield, Inc. v. United States*, 409 F.2d 694, 697 (9th Cir. 1969);

Particularly pertinent here, the Sixth Circuit stands among these courts in following both *Claire Furnace* and *Reisman* in the context of a preenforcement challenge to FTC compulsory process. *See American Motors Corp. v. FTC*, 601 F.2d 1329 (6th Cir. 1979). As that court stated, "Interesting and challenging as are the claims which were presented to the District Court, the parties to this litigation and this court are *required* to follow the legal procedures as they have been laid down by Congress and the Supreme Court." *Id.* at 1330-31 (emphasis added). Those procedures, the court held, "*mandate* the corporation's use of its defenses at any forthcoming FTC enforcement proceeding as its remedy." *Id.* at 1336 (citing *Claire Furnace*, 274 U.S. at 174-75) (emphasis added). Because the plaintiffs' complaint preceded any such enforcement action, the court dismissed it. *Id.* at 1340.

Finally, precedent in the Northern District of Ohio itself has recognized and applied the *Claire Furnace/Reisman* rule. For example, in *Blake v. Tucci*, No. C79-719, 1979 WL 1534 (N.D. Ohio Sept. 4, 1979), Judge Battisti dismissed a petition challenging an IRS summons, finding that "the rule is clear that the petitioner may not institute an action to quash a summons, but must wait to present his defenses at an enforcement proceeding brought by the Internal Revenue Service. . . . [T]he

petitioner does have an adequate remedy at law and is not prejudiced by a dismissal of his complaint." 1979 WL 1534, at *1.

Fully Accountable's Petition, although not an initial filing, seeks the same preenforcement relief as each of these cases. Because precedent from every level of the federal judiciary instructs that that request is improper, premature, and outside of this Court's jurisdiction, it should therefore be denied.

### B.     Deference To The FTC's Authority And Concerns For Judicial Resources Require That Fully Accountable's Claims Be Adjudicated In An FTC-Initiated Enforcement Proceeding.

In *American Motors*, the Sixth Circuit started its review of a similar preenforcement challenge by summarizing the FTC's investigative authority, which it called "great": "The only power that is involved here is the power to get information from those who best can give it and who are most interested in not doing so. . . . [This power] is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *American Motors*, 601 F.2d at 1334 (citing *United States v. Morton Salt Co.*, 332 U.S. 632, 642-43 (1950)).

This broad authority includes the discretion to decide when to carry out an investigation and, specifically, when to seek enforcement for failure to comply with compulsory process. When Congress set forth the procedures for Commission to enforce its process, it did so for a reason: because allowing the investigating agencies to decide whether and when to seek enforcement promoted judicial

efficiency. "The wide scope and variety of the questions, answers to which are asked in these [investigative] orders, show the wisdom of requiring the . . . government to exercise a sound discretion in designating the inquiries to enforce . . . . In a case like this, the exercise of this discretion will greatly relieve the court and may save it much unnecessary labor and discussion." *Claire Furnace*, 274 U.S. at 174 (cited in *American Motors*, 601 F.2d at 1335). The inverse is also true. As Judge Posner held in *General Finance*, "Since the plaintiffs can, in the subpoena enforcement proceeding, get a judicial determination of the lawfulness of the investigation before any sanction for violating the law is imposed on them, a still earlier round of judicial review, in a suit to enjoin the investigation, would waste judicial resources." *General Finance*, 700 F.2d at 369.

Agency-initiated enforcement proceedings better conserve judicial resources because these proceedings are uniformly treated as "summary" in nature. *See, e.g.*, *United States v. Markwood*, 48 F.3d 969, 983 (6th Cir. 1995) (quoting *United States v. Will*, 671 F.2d 963, 968 (6th Cir. 1982)). As such, courts may dispense with some of the procedures typical to plenary litigation in order to achieve a more expeditious result. *See* FED. R CIV. P. 81(a)(5) (authorizing courts to depart from Federal Rules of Civil Procedure in proceedings to enforce administrative process "by court order"). Indeed, discovery in particular is viewed as "improper" in enforcement proceedings, largely because of the delay and costs it brings. *See FTC v. Carter*, 636 F.2d 781, 789 (D.C. Cir. 1980) (quoting *United States v. Exxon*, 628 F.2d 77 n.7 (D.C. Cir. 1980); *see also Markwood*, 48 F.3d at 983 (holding that discovery "would often

destroy the summary nature of such [an enforcement] proceeding") (quoting *Will*, 671 F.2d at 968). Allowing CID compliance to be adjudicated in a preenforcement case would thus effectively transform what should be a summary proceeding into a plenary one, opening the door to unnecessary and inefficient procedures.

Doing so would impose burdens not only on courts but on the agencies as well. As one court reasoned, the "very backbone of an administrative agency's effectiveness in carrying out the congressionally mandated duties of industry regulation is the rapid exercise of the power to investigate." *FTC v. Texaco, Inc.*, 555 F.2d 862, 872-73 (D.C. Cir. 1977) (*en banc*) (quoting *FMC v. Port of Seattle*, 521 F.2d 431, 433 (9th Cir. 1975)). To require agencies to litigate subpoena compliance in full plenary litigation would seriously undermine this "rapid exercise" of their investigational authority.

These resource concerns are not merely hypothetical. Many of the FTC's investigations involve multiple targets, sometimes even entire industries, often spread across several judicial districts. In such cases, allowing CID recipients to file preenforcement actions and then adjudicating those cases on the merits could place severe burdens on the courts and the agency. Indeed, the *General Finance* case arose out of a series of simultaneous multiple preenforcement challenges to FTC CIDs in different districts around the country. *See* 700 F.2d at 368, 369 ("The plaintiffs would have us allow each of the 43 targets of the investigation to sue the FTC, maybe in 43 different districts."). The Seventh Circuit found the prospect of adjudicating these cases in this fashion uneconomical, finding "[t]he waste of

judicial resources would be very great" if parties could freely file such cases. *Id.* at 369. To the contrary, that court found the FTC's statutory procedures more efficient: "If judicial review is confined to suits to enforce the subpoenas, budgetary limitations if nothing else should force the FTC to bring as few suits as it can consistent with [its] venue limitations." *Id.*

These reasons are sufficient by themselves to deny Fully Accountable's Petition but are even more persuasive considering that Fully Accountable faces no prejudice. Currently, there is no penalty imposed—civil, criminal, or financial—on Fully Accountable as a result of its refusal to answer the FTC's CID. *See FTC v. Manufacturers Hanover Consumer Servs., Inc.*, 543 F. Supp. 1071, 1075 (E.D. Pa. 1982). Indeed, the Supreme Court noted in *Claire Furnace* that "Until the [FTC] acts, the defendants cannot suffer, and, when [it] does act, they can promptly answer and have full opportunity to contest the legality of any prejudicial proceeding against them. That right being adequate, they were not in a position to ask relief by injunction." 274 U.S. at 174. Thus, Fully Accountable has no risk of loss from being required to follow Congress's chosen procedure for enforcing FTC CIDs.

## III.     CONCLUSION

Fully Accountable's Petition challenging the FTC most recent CID is not properly before this Court. Instead, Fully Accountable must raise any objections in the course of an FTC-initiated enforcement proceeding. This Court should therefore deny Fully Accountable's Petition.

Respectfully submitted,

ALDEN F. ABBOTT
General Counsel

JAMES REILLY DOLAN
Principal Deputy General Counsel

*/s/ Burke W. Kappler*
BURKE W. KAPPLER
Attorney

FEDERAL TRADE COMMISSION
600 Pennsylvania Ave., N.W.
Washington, DC 20580
Tel.: (202) 326-2043
Fax: (202) 326-2477
Dated: February 4, 2019.          Email: bkappler@ftc.gov

### **Certificate of Service**

I hereby certify that on February 4, 2019, I served the foregoing Opposition to Fully Accountable, LLC's Petition to Enforce Petition to Quash and Limit by filing it with the CM/ECF system for the Northern District of Ohio, which provides a notification to all counsel appearing in this matter.

*/s/ Burke W. Kappler*
BURKE W. KAPPLER